UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>  v.                                                      )<br>)<br>)<br>DONALD ROSS WORKMAN, JR.,   )<br>  Defendant                                     )<br>_____ | Case No. 1:24-cr-00398-DLF |

## DEFENDANT WORKMAN'S MOTION TO DISMISS COUNTS THREE, FOUR AND FIVE OF THE INDICTMENT

The Defendant **DONALD ROSS WORKMAN, JR.**, through his counsel, files this motion to dismiss Counts 3,4 and 5 of the Indictment, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, because they fail to state valid offenses and violate several constitutional protections. Additionally, the instant motion is submitted in light of the recent decisions in this District by Judge Cooper in *United States v. Groseclose*, Case No. 21-cr-311 (CRC) (January 5, 2024) and Judge Nichols in *United States v. Elizade,* Case No. 23-cr-170 (CJN) (December 1, 2023). Moreover, the Defendant recognizes the 2 to 1 decision by the D.C. Circuit Court in *United States v. Griffin*, which held contrary to the knowledge of the presence of a protectee argument raised in this motion.  Finally, as will be demonstrated below, the government's overreach in using this statute runs afoul of the recent pronouncements of the U. S. Supreme Court in *Dubin v. United States,* (2023), *Ciminelli v. United States, (2023)* and *Kelly v. United States,* (2020).

1

I.    **INTRODUCTION**

Count 3 of Indictment charges that, on January 6, 2021, defendant "did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, without lawful authority to do so, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon," in violation of 18 U.S.C. § 1752(a)(1).    Count 4 of the Indictment charges under §1752(a)(2) and (b)(1)(A), that defendant "did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon," in violation of Title 18 United States Code, Section 1752(a)(2).

Since its enactment in 1970, Section 1752 has criminalized the unlawful entry into areas ***restricted by virtue of the protection by the U.S. Secret Service (USSS) to its enumerated protectees***. Thus, the Capitol building being closed for repairs, or for fumigation, or for a private event ***does not*** trigger application of § 1752.

Statutory text, legislative history, and common sense all point to the conclusion that the agency that restricts such areas is the one that guards the protectee, i.e., the **USSS**. But herein, the government stretches the statute's reach by contending that any federal or state entity may criminalize a person's movements under §1752, provided a **USSS** protectee is somewhere within the area it restricts. It alleges that the defendant violated §1752 because the Capitol grounds, upon which he stood, had been *visibly* restricted by the U.S. Capitol Police, hereinafter "**USCP**". But the **USCP** *does not* guard Secret Service protectees identified in §1752; they protect members of Congress, who are *neither* guarded by the **USSS** *nor* covered by §1752. The government's interpretation of §1752 is an argument unsupported by the statute and designed apparently for January 6 defendants alone.

The Indictment should be dismissed as it does not state §1752 offenses[1]. The government's statutory construction would lead to absurd results unintended by Congress. As applied to the defendant, the government's interpretation of §1752 is also void for vagueness, requiring dismissal under the Due Process Clause of the Fifth Amendment to the Constitution, particularly in the context of defendant's political speech, assembly and petitioning of the government for a redress of grievances. U.S. Const. Amend I. And even if the statute's notice were not unconstitutionally vague, the very fact that the government's interpretation of a 50-year-old statute is without precedent means that the rule of lenity, and the novel construction principle, require any ambiguity to be resolved in defendant's

3

favor.

---

[1] As mentioned previously, Judge Nichols recently dismissed similar counts in *United States v. Elizalde*, Case No. 23CR170, adopted the defendant's reading of § 1752(a)(1) and issued Final Bench Instructions [ECF 40] providing: The government must prove that the defendant knew that he had entered or remained in what he knew to be a restricted building or grounds and that he knew that he did not have lawful authority to enter that area. *It is insufficient for the government to prove that the defendant merely knew that the area he entered or remained in was restricted in the colloquial sense*. The government must instead prove that (A) the defendant knew that the area was 'posted, cordoned off, or otherwise restricted' and (B) the defendant *knew that the Vice President or the Vice President's immediate family was or would be temporarily visiting the area*. *See also*, ECF 39. Similarly, Judge Cooper, in *United States v. Groseclose*, Case No. 21CR311, opined that to convict a defendant "of violating 18 U.S.C. §1752(a)(1) and (a)(2), the government must prove beyond a reasonable doubt that Groseclose knew that (1) the Capitol building and its grounds were 'posted, cordoned off, or otherwise restricted' on January 6 and (2) a 'person protected by the Secret Service [was] or [would] be temporarily visiting' the Capitol that day."

---

## II. ARGUMENT

### A. **Standard for a Rule 12(b) motion to dismiss a criminal indictment**

Rule 7 of the Federal Rules of Criminal Procedure provides that "the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" Fed. R. Crim. P. 7(c)(1). This rule performs three constitutionally required functions: (1) fulfilling the Sixth Amendment right to be informed of the nature and cause of the accusation; (2) preventing a person from being subject to double jeopardy, as required by the Fifth Amendment; and (3) protecting against prosecution for crimes based on evidence not

presented to the grand jury, as required by the Fifth Amendment. *See*, *e.g.*, *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).

Rule 12 provides that a defendant may move to dismiss the pleadings based on a "defect in the indictment or information," including a "lack of specificity" and a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii),(v). In the Supreme Court's last decision to address the standard, it held that an indictment must "fairly inform a defendant of the charge against which he must defend" and "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974).

Here, the facts thus far do not support a conviction under this statute. There is no evidence that Workman knew the Vice President (a person protected by the Secret Service) was visiting and no direct evidence that Workman knew what a restricted area was.

### B. The Indictment fails to state an offense because only the USSS restricts areas under §1752

The government's legal theory in this case is that the defendant violated that statute by crossing into an area restricted by the U.S. Capitol Police, i.e., the west front of the U.S. Capitol on January 6. The government's position finds no support in the statutory text, the legislative history, or precedent. Penal statutes are strictly construed. *United States v. Moore*, 613 F.2d 1029, 198 U.S. App. D.C. 296 (D.C.

Cir. 1979). As shown above, all three definitions of "restricted building or grounds" in §1752(c)(1) concern the authority and actions of **the USSS** and not any other federal agency. Section 3056, concerning the "powers, authorities, and duties of United States Secret Service," confirms that §1752 is a statute directed to the **USSS** and not any other federal agency. 18 U.S.C. § 3056(d). The legislative history of §1752 is saturated with references to the **USSS** and to no other federal agency. Common sense should be applied with the statutory analysis. The government claims that any federal or state agency may unilaterally set a "restricted area" and arrest anyone found within it so long as a Secret Service protectee is also present. The implications of that argument are absurd. Accordingly, such a statutory interpretation is highly disfavored. *See United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543, 60 S. Ct. 1059, 84 L. Ed. 1345 (1940) ("When [one possible statutory] meaning has led to absurd or futile results this Court has looked beyond the words to the purpose of the act."); *see also Corley v. U.S.*, 556 U.S. 303, 317, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009) (interpreting criminal procedure statute to avoid "absurdities of literalism"); *Ctr. for Biological Diversity v. E.P.A.*, 722 F.3d 401, 411, 406 U.S. App. D.C.140 (D.C. Cir. 2013) (recognizing "'the long-standing rule that a statute should not be construed to produce an absurd result'" (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068, 329 U.S. App. D.C. 341 (D.C. Cir. 1998)).

That is why what little § 1752 precedent there is supports the defendant, while nothing supports the government's interpretation. Instructive is *United States v.*

*Bursey*, 416 F.3d 301 (4th Cir. 2005). There, the defendant entered an area restricted by the **USSS** in advance of a political rally in South Carolina held by the president. *Id.*, at 304. Reviewing the trial record, the Fourth Circuit observed that "the Secret Service designated an area near [the rally] as a restricted area." *Id.* It also noted that the "authorized persons" admitted into the area all "wore lapel pins issued by the Secret Service," meaning that the **USSS** was the entity that granted "lawful access" to the area. *Id.* Intending to protest the Iraq war, Bursey approached the restricted area with a megaphone. A Secret Service Agent advised him he could not remain in that area. He was repeatedly advised thereafter of the same by multiple law enforcement agents over a twenty-to-twenty-five-minute period. *Id.* Bursey was charged and convicted under § 1752(a)(1).

The sufficiency argument Bursey raised on appeal was that, as a matter of *mens rea*, "he was never advised that the area was a federally restricted zone, *so designated by the Secret Service*." 416 F.3d at 308 (emphasis added). The Fourth Circuit rejected this argument but not on the ground that §1752 restricted areas need not be so restricted by the **USSS**. Instead, trial evidence showed that Bursey **"understood the restriction to have been created by the Secret Service (as opposed to state or local law enforcement)."** *Id.* (emphasis added).

The import of the Fourth Circuit's logic is clear. Had the Fourth Circuit even contemplated the idea that entities other than the USSS could restrict areas under §1752, the above reasoning would lack sense. Likewise, the trial court also simply

assumed the **USSS** was the only entity that restricts areas under the statute. *United States v. Bursey*, 2004 U.S. Dist. LEXIS 29661, at *31 (D.S.C. Sept. 13, 2004) ("Bursey's own testimony confirms that he understood the restrictions would be established by the Secret Service.").

Under the government's interpretation of §1752, there is *no* notice, much less "fair notice," of the conduct proscribed *in this case*. As shown above, the text, legislative history, and common sense all point to the ordinary person's reasonable conclusion that the government agency that may restrict a person from entering an area in which there is a Secret Service protectee is—the Secret Service. Assuming *arguendo*, that Workman saw police lined up outside the U.S. Capitol, and like all the other defendants, therefore must have seen barricades marked as the property of the U.S. Capitol police. But if the text, legislative history and common sense inform an "ordinary person" that he violates § 1752 by entering an area *the Secret Service* has restricted there is no similar notice in the statute that being on the wrong side of a *police* barricade is, *independent of the Secret Service*, in violation of that statute. The Indictment does not allege postings on January 6 warning the defendant that the Secret Service designated the area *he entered* as restricted. It does not allege that any law enforcement officer notified the defendant of that fact. Nothing in §1752 so much as hints at the possibility that disobeying local law enforcement *per se* may result in liability under that statute, provided some **USSS** protectee lurks somewhere within the restricted area.

In this case, the void-for-vagueness doctrine's function of guarding against arbitrary or discriminatory law enforcement is worth elaborating. As Justice Gorsuch explained in a *Dimaya* concurrence,

> Vague laws invite arbitrary power. Before the Revolution, the crime of treason in English law was so capaciously construed that the mere expression of disfavored opinions could invite transportation or death. The founders cited the crown's abuse of 'pretended' crimes . . . as one of their reasons for revolution. . . Today's vague laws may not be as invidious, but they can invite the exercise of arbitrary power all the same—by leaving the people in the dark about what the law demands and allowing prosecutors and courts to make it up.

138 S. Ct. at 1223-24.

Justice Gorsuch gave some early, foundational examples of statutes that failed to provide fair notice and thus led to arbitrary enforcement:

> Blackstone illustrated the point with a case involving a statute that made "stealing sheep, or other cattle" a felony. 1 Blackstone 88 (emphasis deleted). Because the term "cattle" embraced a good deal more then than it does now (including wild animals, no less), the court held the statute failed to provide adequate notice about what it did and did not cover—and so the court treated the term "cattle" as a nullity. *Ibid.* All of which, Blackstone added, had the salutary effect of inducing the legislature to reenter the field and make itself clear by passing a new law extending the statute to "bulls, cows, oxen," and more "by name." . . .
>
> This tradition of courts refusing to apply vague statutes finds parallels in early American practice as well. In *The Enterprise*, 8 F. Cas. 732, F. Cas. No. 4499 (No. 4,499) (CC NY 1810), for example, Justice Livingston found that a statute setting the circumstances in which a ship may enter a port during an embargo was too vague to be applied, concluding that "the court had better pass" the statutory terms by "as unintelligible and useless" rather than "put on them, at great uncertainty, a very harsh signification, and one which the legislature may never have designed." *Id.,* at 735. In *United States* v. *Sharp*, 27 F. Cas. 1041, F. Cas. No. 16264 (No. 16,264) (CC Pa. 1815), Justice Washington confronted a statute which prohibited seamen from making a "revolt." *Id.*, at 1043. But he was unable to determine the meaning of this provision "by any authority . . . either in the common, admiralty, or civil law." *Ibid.* As a result, he declined to "recommend to the jury, to find the prisoners guilty of making, or endeavoring to make a revolt, however strong the evidence may be." *Ibid.*

> Nor was the concern with vague laws confined to the most serious offenses like capital crimes. Courts refused to apply vague laws in criminal cases involving relatively modest penalties. *See*, *e.g., McJunkins* v. *State*, 10 Ind. 140, 145 (1858).

138 S. Ct. at 1226.

The concern about vagueness-enabled arbitrary enforcement is manifested here. It takes two forms, which might be called specific and general arbitrariness. At a general level, the government's enforcement of §1752 against the defendant is arbitrary because, prior to January 6, it had never prosecuted a violation of that statute with the allegation that the accused entered an area restricted by some government agency other than the USSS. Accordingly, the government's election to put a new interpretation on the statute for a select group of related cases raises questions about discriminatory law enforcement. Those questions are only underlined by the patently political nature of the circumstances of the offense, as well as the criminalization of defendant's First Amendment rights to political speech, assembly, and to petition the government for a redress of grievances. U.S. Const. amend I; *Hoffman Estates*, 455 U.S. at 500 (stricter scrutiny of vague statutes in the context of activities protected by the First Amendment).

Perhaps more serious is the specific arbitrariness here. Insofar as they allege that the defendant entered and remained in a "restricted area" set by an agency nowhere identified in the statute, Counts Three, Four and Five are unconstitutionally vague.

### C. The rule of lenity dictates that this ambiguity in §1752 be resolved in the defendant's favor.

Even if § 1752 is not unconstitutionally vague as applied to the defendant, any ambiguities in the statute should be resolved in his favor under the rule of lenity. Under that principle, "where text, structure, and history fail to establish that the government's position is unambiguously correct," courts must "apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 54 (1994). "When interpreting a criminal statute, we do not play the part of a mind reader." *United States v. Santos*, 553 U.S. 507, 515 (2008) (Scalia, J.). "In our seminal rule-of-lenity decision, Chief Justice Marshall rejected the impulse to speculate regarding a dubious congressional intent. 'Probability is not a guide which a court, in construing a penal statute, can safely take.'" *Id.*, *quoting United States v. Wiltberger*, 18 U.S. 76 (1820)).

Here, even if the Court decides that the government's interpretation of §1752 is formally correct—i.e., that any agency may set restricted areas under §1752(c) and that §1752(a)(2)'s reference to conduct "within such proximity to" a restricted area applies to the west front of the Capitol steps on January 6—it is plainly not *unambiguously* so. That is demonstrated by the lack of any reference in §1752 to any agencies *other* than the **USSS**; the statute's legislative history, which similarly focuses exclusively on the **USSS**; the clear role that the **USSS** plays in all three definitions of "restricted buildings or grounds" in § 1752(c); the indication in Section

3056 that the **USSS** enforces restricted areas in §1752; the lack of any case law supporting the government's position; and the common sense notion that if the **USSS** patrols and guards the restricted areas in §1752, it also sets them.

Because the government's interpretations are not unambiguously correct, this Court is required to resolve any ambiguities in defendant's favor by dismissing the Indictment. *Granderson*, 511 U.S. at 54; *Santos*, 553 U.S. at 515.

### D. The novel construction principle dictates against the government's interpretation, which would operate as an *ex post facto* law

Because no court has ever construed Section 1752 to mean that agencies ***other than the* USSS** may set restricted areas under the statute, such a construction would be novel and therefore the statute did not give the defendant fair warning of what it proscribed.

The Supreme Court has held that the novel construction principle is similar to an *ex post facto* law which has been described as one "that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964). "[A]n unforeseen judicial enlargement of a criminal statute, applied retroactively, operates precisely as an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *Id.* If a "legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a [court] is barred by the Due Process Clause from achieving

precisely the same result by judicial construction." *Id.*

*Bouie* also concerned a trespass case that gave every indication of being politically motivated. The 1964 case involved a combination drugstore and restaurant in South Carolina. The restaurant would not serve black Americans. Two black college students took seats in the restaurant. After they entered, an employee hung up a "no trespass" sign. The store manager called the police, who asked the students to leave. When they refused, they were arrested and charged with trespass. The students were tried and convicted, with the State Supreme Court upholding the trespass convictions. The Supreme Court reversed, based on the novel construction principle of the Due Process Clause. It reasoned that the South Carolina Supreme Court's construction of the trespass statute was effectively an *ex post facto* law. By its terms, the state statute merely prohibited "*entry* upon the lands of another . . .after notice from the owner.. prohibiting such entry. . ." 378 U.S. at 355 (emphasis added). However, there "was nothing in the statute to indicate that it also prohibited the different act of remaining on the premises after being asked to leave. Petitioners did not violate the statute as it was written; they received no notice before entering either the drugstore or the restaurant department." *Id.* Finally, "the interpretation given the statute by the South Carolina Supreme Court . . . ha[d] not the slightest support in prior South Carolina decisions." *Id*. at 356.

The same is true here. The defendant did not "violate the statute as it was written." *Bouie*, 378 U.S. at 355. Section 1752 prohibits entry into an area restricted

by the **USSS**. There is "nothing in the statute to indicate that it also prohibited the different act," *Bouie*, 378 U.S. at 355, of entering into an area restricted by the U.S. Capitol Police. "The interpretation given the statute by the [government] has not the slightest support in prior [§ 1752] decisions." *Id.*

The Supreme Court's recent and unequivocal mandate to prosecutors that they should not expand the scope of federal criminal statues beyond **"the crux of the criminality"** they prohibit, *Dubin v. United States*, 599 U.S.--- (2023), is merely the latest in a string of decisions where the Court has mandated federal prosecutors to curtail their overbroad interpretation of federal statutes. Similarly, in *Ciminelli v. United States*, 598 U.S. ---, 143 S. Ct. 1121, 1128 (2023), the Court warned prosecutors not to **"criminalize traditionally civil matters and federalize traditionally state matters."** And in *Kelly v. United States*, 590 U.S. ---, 140 S. Ct. 1565, 1571-72 (2020), prosecutors were admonished not to **seek to turn every act of dishonesty or false dealing into a federal fraud offense**. Reading these three recent pronouncements from the highest court in the land, it is evident that the government's use of the 18 U.S.C. 1752 in Counts 2 and 3 is inappropriate and violative of the spirit and unambiguous holding in these three cases.

Accordingly, the novel construction principle dictates against the government's interpretation, which stretches this statute beyond its intended purpose, operates as an improper *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment.

## III. CONCLUSION

For all the foregoing reasons, Defendant Workman respectfully requests that the Court dismiss Counts Three, Four and Five of the Indictment with prejudice.

Respectfully submitted,

>GEORGE T. PALLAS, P.A
>Counsel for Donald Ross Workman, Jr.
>Bar No.: FL0108
>2420 SW 22nd Street
>Miami, FL 33145
>305-856-8580
>305-860-4828 FAX
>george@pallaslaw.com
>
>By:/s/___*George T. Pallas*_____
>        GEORGE T. PALLAS, ESQ.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing.

>By:/s/ *George T. Pallas*_____
>     GEORGE T. PALLAS, ESQ

Case 1:24-cr-00398-DLF   Document 27   Filed 12/17/24   Page 16 of 16